[No. S174016. June 17, 2010.]

SCOTT MINKLER, Plaintiff and Appellant, v.
SAFECO INSURANCE COMPANY OF AMERICA, Defendant and
Respondent.

**COUNSEL**

Shernoff Bidart Darras Echeverria, Shernoff Bidart Echeverria, Michael J. Bidart, Ricardo Echeverria; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Steven W. Murray as Amicus Curiae on behalf of Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Christina J. Imre, Gregory Halliday and William Burger for Defendant and Respondent.

Lewis Brisbois Bisgaard & Smith and Raul L. Martinez for American Insurance Association, Pacific Association of Domestic Insurance Companies and Property Casualty Insurers Association of America as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BAXTER, J.**—We have agreed to answer a question of California insurance law directed to us by the United States Court of Appeals for the Ninth Circuit. Scott Minkler (Scott) sued David Schwartz (David) and David's mother, Betty Schwartz (Betty), alleging that David, an adult, sexually molested Scott, then a minor. The complaint alleged, among other things, that some of the acts of molestation occurred in Betty's home, and as a result of Betty's negligent supervision.

Betty was the named insured under a series of homeowners policies issued by Safeco Insurance Company of America (Safeco), and David was an additional insured. The policies' liability coverage provisions promised to defend and indemnify, within policy limits, "an" insured for personal injury or property damage arising from a covered "occurrence," but they specifically excluded coverage for injury that was "expected or intended" by "an" insured, or was the foreseeable result of "an" insured's intentional act. Absent contrary evidence, in a policy with multiple insureds, exclusions from coverage described with reference to the acts of "an" or "any," as opposed to "the," insured are deemed under California law to apply collectively, so that if one insured has committed acts for which coverage is excluded, the exclusion applies to all insureds with respect to the same occurrence. (E.g., *Fire Ins. Exchange v. Altieri* (1991) 235 Cal.App.3d 1352, 1360–1361 [1 Cal.Rptr.2d 360] (*Altieri*); see *California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976) 17 Cal.3d 190, 194–195 [130 Cal.Rptr. 520, 550 P.2d 1056].)

However, as is often the case, the instant policies also contained a severability-of-interests or "separate insurance" clause providing that "[t]his insurance applies separately to each insured." The question is whether such a clause establishes, in a case like this, an exception to the rule described above, so that Betty is barred from coverage only if her *own* conduct in relation to David's molestation of Scott fell within the policies' exclusion for intentional acts.

Courts nationwide are split on the general issue whether a severability-of-interests provision in a policy covering multiple insureds alters the otherwise collective effect of an exclusion for the acts of "an" or "any" insured. Two California Court of Appeal decisions, though not directly on point, are

arguable authority for the proposition that a severability-of-interests clause cannot have such an effect. (See *Bjork v. State Farm Fire & Casualty Co.* (2007) 157 Cal.App.4th 1 [68 Cal.Rptr.3d 405] *(Bjork)*; *California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682 [56 Cal.Rptr.2d 434] *(California Casualty Ins. Co.)*.) A majority of this court has not previously spoken on the point. (But see *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 771–778 [110 Cal.Rptr.2d 844, 28 P.3d 889] (conc. & dis. opn. of Baxter, J.) *(Robert S.)*.)

■ Applying California principles of insurance policy interpretation, we now conclude that an exclusion of coverage for the intentional acts of "an insured," read in conjunction with a severability or "separate insurance" clause like the one at issue here, creates an ambiguity which must be construed in favor of coverage that a lay policyholder would reasonably expect. Given the language of the "separate insurance" clause, a lay insured would reasonably anticipate that, under a policy containing such a clause, each insured's coverage would be analyzed separately, so that the intentional act of one insured would not, in and of itself, bar liability coverage of another insured for the latter's independent act that did not come within the terms of the exclusion. We thus determine that Betty was not precluded from coverage for any personal role she played in David's molestation of Scott *merely* because *David's* conduct fell within the exclusion for intentional acts.

## FACTS

The facts are taken (with some paraphrasing) from the Ninth Circuit's order in *Minkler v. Safeco Ins. Co.* (2009) 561 F.3d 1033 *(Minkler)*, requesting this court to address an issue of California law.

In 2003, Scott sued Betty and David in superior court. Scott's first amended complaint alleged that David, Scott's Little League coach, had sexually molested Scott over a period of several years, beginning in 1987. Scott asserted multiple causes of action against David, including sexual battery, intentional infliction of emotional distress, negligence, and negligence per se. Scott also asserted a single cause of action for negligent supervision against Betty, based on allegations that David molested Scott in Betty's home, that Betty knew her son was molesting Scott, but that Betty failed to take reasonable steps to stop her son from doing so.

From August 26, 1988, to August 26, 1995, Betty held a series of homeowners insurance policies issued by Safeco.[1] The policies provided

---

[1] The annually renewed policies did not differ materially in their terms. Thus we, like the Ninth Circuit, discuss them collectively as "the policies."

general liability coverage to each insured up to a limit of $300,000 for each occurrence. The policies defined "an insured" to include both the policyholder and any relative resident of the policyholder's household. At the relevant times, David was an additional insured under the policy, apparently by virtue of this definition.

The "Exclusions" provisions of the policies' liability coverage section contained an intentional acts exclusion that provided: "Personal Liability [coverage] . . . do[es] not apply to bodily injury or property damage: (a) which is expected or intended by an insured or which is the foreseeable result of an act or omission intended by an insured . . . ." However, the policies' "Conditions" provisions also contained a severability-of-interests clause that stated: "This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence." (See *Minkler, supra*, 561 F.3d 1033, 1034.)

Acting on behalf of himself and Betty, David tendered the defense of Scott's complaint to Safeco. Citing the intentional acts exclusion, Safeco's insurance adjuster denied the tender as to both David and Betty.

Scott then obtained a default judgment against Betty in the amount of $5,020,612.20. Subsequently, Scott entered into a settlement agreement with Betty. In exchange for a covenant not to execute on the judgment, Betty assigned her claims against Safeco to Scott.

On May 15, 2007, Scott filed this action in superior court against Safeco and Safeco's insurance adjuster, Patricia Orris. The complaint asserted causes of action for breach of contract and tortious breach of the covenant of good faith and fair dealing. It alleged, in essence, that, in light of the severability-of-interests clause, Safeco had wrongfully denied coverage for Scott's claim against Betty. By stipulation, Orris was dismissed from the action. Safeco removed the case to the United States District Court for the Central District of California on the basis of diversity of citizenship.

In federal court, Safeco filed a motion to dismiss (Fed. Rules Civ.Proc., rule 12(b)(6), 28 U.S.C.) on the ground the intentional acts exclusion barred coverage for Scott's claims against Betty. Scott conceded that, absent the severability clause, the intentional acts exclusion would bar coverage for his negligent supervision claim against Betty; David was "an insured" within the meaning of the policy, and Scott's bodily injury resulted from David's intentional acts. However, Scott contended the severability-of-interests clause excepted Betty's coverage from the exclusion, either expressly or under California rules for interpretation of ambiguity in insurance contracts.

The district court granted Safeco's motion to dismiss, and Scott timely appealed. Concluding that the effect, under California law, of the severability-of-interests clause on the policies' coverage of Scott's claim against Betty would determine the outcome of the action, the Ninth Circuit requested that this court decide the following question: "Where a contract of liability insurance covering multiple insureds contains a severability-of-interests clause in the 'Conditions' section of the policy, does an exclusion barring coverage for injuries arising out of the intentional acts of 'an insured' bar coverage for claims that one insured negligently failed to prevent the intentional acts of another insured?"

Pursuant to California Rules of Court, rule 8.548(f)(5), we restated the question slightly to read as follows: "Where a contract of liability insurance covering multiple insureds contains a severability clause, does an exclusion barring coverage for injuries arising out of the intentional acts of 'an insured' bar coverage for claims that one insured negligently failed to prevent the intentional acts of another insured?" We turn to that issue.

## DISCUSSION[2]

█ The principles governing the interpretation of insurance policies in California are well settled. "Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; see Civ. Code, § 1636.) 'If contractual language is clear and explicit, it governs.' (*Bank of the West*, at p. 1264; see Civ. Code, § 1638.) If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect ' "the objectively reasonable expectations of the insured." ' (*Bank of the West*, at p. 1265, quoting *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer. (*Bank of the West*, at p. 1264.)" (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 501 [30 Cal.Rptr.3d 787, 115 P.3d 68].) The "tie-breaker" rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection. (See *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 [79 Cal.Rptr.3d 721, 187 P.3d 424]; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37–38 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

---

[2] An amicus curiae brief in support of Betty has been filed by Steven W. Murray, APC. An amicus curiae brief in support of Safeco has been filed jointly by the American Insurance Association, the Pacific Association of Domestic Insurance Companies, and the Property Casualty Insurers Association of America.

To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies. (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27 [50 Cal.Rptr.3d 597, 145 P.3d 472]; *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647–648 [3 Cal.Rptr.3d 228, 73 P.3d 1205] (*MacKinnon*); see also *E.M.M.I., Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 471 [9 Cal.Rptr.3d 701, 84 P.3d 385]; *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704].)

The existence of a material ambiguity in the terms of an insurance policy may not, of course, be determined in the abstract, or in isolation. The policy must be examined as a whole, and in context, to determine whether an ambiguity exists. (*MacKinnon, supra,* 31 Cal.4th 635, 648; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

The basic liability coverage offered by Betty's Safeco policies was expressed as follows: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] 2. provide a defense at our expense . . . ." Safeco does not contend that Scott's claims against Betty fell outside the scope of this basic coverage provision.[3]

In the liability "Exclusions" provisions, the policies stated that "Personal Liability [coverage] . . . do[es] not apply to bodily injury or property damage . . ." which, among other things, "is expected or intended by *an insured* or which is the foreseeable result of an act or omission intended by *an insured* . . . ." (Italics added.) California decisions uniformly have held that, viewed in isolation, a clause excluding coverage for particular conduct by "an" or "any" insured, as opposed to "the" insured, means that such

---

[3] The policies defined an "occurrence" as "an *accident,* including exposure to conditions which results, during the policy period, in bodily injury or property damage." (Italics added.) Safeco does not assert that Scott's claims related to his alleged molestations by David are beyond the scope of this basic coverage because the molestations were not "accident[s]," and we have not been asked to address that issue. We therefore do not do so. (But see *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 308–317 [97 Cal.Rptr.3d 298, 211 P.3d 1083]; *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 560 [91 Cal.Rptr. 153, 476 P.2d 825].)

conduct by one insured will bar coverage for all other insureds under the same policy on claims arising from the same occurrence. This rule applies even when the insureds seeking coverage did not themselves participate in the act for which coverage is excluded, and even when their liability is premised on their own independent acts or omissions that would otherwise be covered. (*Medill v. Westport Ins. Corp.* (2006) 143 Cal.App.4th 819, 832 [49 Cal.Rptr.3d 570]; *California Casualty Ins. Co., supra,* 48 Cal.App.4th 1682, 1697–1698; *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1486–1487 [35 Cal.Rptr.2d 698]; *Altieri, supra,* 235 Cal.App.3d 1352, 1361.)

However, the "Conditions" provisions of Betty's policies declared that "[*t*]*his insurance* applies *separately to each insured.* This condition will not increase our limit of liability for any one occurrence." (Italics added.) The issue presented is whether this severability or "separate insurance" clause created ambiguity as to the scope of the exclusion for intentional acts by "an" insured, and if so, whether the ambiguity must be resolved in favor of an interpretation whereby the exclusion applied only to the insured who committed such acts. We conclude that the answer to both questions is yes.

Though Safeco argues otherwise (see discussion, *post*), a reasonable interpretation of the severability language simply *contradicts* any inference that a coverage exclusion for the intentional acts of "an insured"—i.e., one insured among several—would bar coverage for all others, such that all must sink or swim together. The severability clause stated that "[t]his *insurance*" (italics added) was "separately" applicable to "each insured." The broad reference to separate application of "this insurance" suggested, as indicated above, that *each* person the policies covered would be treated, for *all policy purposes*, as if he or she were the *sole* person covered—i.e., that in effect, each insured had an *individual* policy whose terms applied only to him or her.

Safeco points to the second sentence of the severability clause, specifying that "[t]his condition will not increase our limit of liability for any one occurrence." Such language, Safeco asserts, unambiguously demonstrates that the sole purpose of the entire clause was to specify that each insured was separately entitled, if otherwise covered for a particular claim, to be indemnified up to the *full policy limits* applicable to an individual insured, so long as the $300,000 per occurrence limit was not exceeded.

We do not agree. The clause certainly had that effect, but nothing in its language suggests this was its only aim. The words of the clause can reasonably be read to mean that the per occurrence indemnity ceiling was the sole *exception* to the general rule that *all* provisions of the policies—i.e., "[t]his insurance"—would apply to each insured as if he or she were the only insured.

Of course, Safeco could easily have removed any uncertainty and made explicit that the severability clause had only the limited meaning Safeco now asserts. Safeco only needed to replace the first sentence of the clause with a provision that "[t]he *limits of liability of* this policy apply separately to each insured." Such language would have made clear that the clause's purpose was not to make exclusions from coverage individual rather than collective, but merely to extend the full individual indemnity limits to each person among several insureds under the same policy, subject to the per occurrence ceiling.

Safeco explains that severability clauses were first added to commercial liability policies in the mid-1950's to countermand a line of decisions which had held that a provision excluding coverage for "*the* insured" in a policy with multiple insureds operated collectively, so as to exclude coverage for all, with respect to a particular occurrence, if it excluded coverage for any. (See, e.g., *Michael Carbone, Inc. v. General Acc. Ins. Co.* (E.D.Pa. 1996) 937 F.Supp. 413, 419 (*Michael Carbone, Inc.*); *State, Dept. of Transp. v. Houston Cas.* (Alaska 1990) 797 P.2d 1200, 1205–1206 (conc. opn. of Matthews, J.); Smith & Simpson, *The Mixed Action Rule and Apportionment/Allocation of Defense Costs and Indemnity Dollars* (2003) 29 T. Marshall L.Rev. 97, 178; Tinker, *Comprehensive General Liability Insurance—Perspective and Overview* (1975) 25 Fed'n Ins. Couns. Q. 217, 237.) But Safeco fails to indicate how this history resolves any facial ambiguity in the clause at issue here. Indeed, it *undermines* Safeco's limited construction of the current clause by establishing that the original intent *was to make clear the separate application of policy exclusions, not just liability limits, to each individual insured.*

Nor are we persuaded that there can be no ambiguity because the severability clause did not appear in the "Exclusions" provisions of the policies, but in the "Conditions" provisions. Safeco suggests the latter section was not concerned with the scope of liability coverage, or exclusions therefrom, but instead set forth the parties' mutual obligations in implementing the policy provisions. But again, Safeco fails to indicate how a policy "[c]ondition[]" stating that "[t]his insurance" applies separately to each insured is not reasonably susceptible of the construction that the entire policy, particularly its exclusions from coverage, has such a separate effect as to each insured.

For these reasons, we are convinced that the severability clause in Betty's Safeco policies, when read in conjunction with the exclusion for the intentional acts of "an insured," created an ambiguity as to whether a coverage exclusion for an intentional act or injury by one insured extended to all other insureds under the policies. Accordingly, we must construe that ambiguity, if possible, to conform to the objectively reasonable coverage expectations of the insured.

We conclude that, in light of the severability clause, Betty would reasonably have expected Safeco's policies, whose general purpose was to provide coverage for each insured's "legal[] liab[ility]" for "injury or . . . damage" to others, to cover her *separately* for her *independent* acts or omissions causing such injury or damage, so long as *her* conduct did not fall within the policies' intentional acts exclusion, even if the acts of *another* insured contributing to the same injury or damage *were* intentional. Especially when informed by the policies that "[t]his insurance applies separately to each insured," it is unlikely Betty understood that by allowing David to reside in her home, and thus to become an additional insured on her homeowners policies, "[she was] *narrowing [her] own coverage* for claims arising from his [intentional] torts. In light of the severability provision, Safeco's intent to achieve that result was not clearly expressed, and the ambiguity must be resolved in the [insured's] favor." (*Robert S.*, *supra*, 26 Cal.4th 758, 777 (conc. & dis. opn. of Baxter, J.).)

Safeco suggests Betty could not reasonably expect coverage for "parasitic" claims against her arising from David's intentional acts. But this is not a situation where the only tort was the intentional act of one insured, and where the liability of a second insured, who claims coverage, is merely *vicarious* or *derivative*. On the contrary, Scott's claim against Betty clearly depends upon allegations that she herself committed an *independent tort* in failing to prevent acts of molestation she had reason to believe were taking place in her home. Under such circumstances, she had objective grounds to assume she would be covered, so long as she herself had not acted in a manner for which the intentional acts exclusion barred coverage.

Safeco asserts that, unless we conclude Betty's policies barred coverage for claims against Betty arising from David's acts of sexual molestation, we will encourage householders to turn a "blind eye" to acts of sexual abuse taking place in their homes. Certainly we do not wish to promote such a result. But we must interpret the policies as we find them, and in that context, Safeco's argument proves both too much and too little.

We confront here simply an exclusion for intentional acts by "an" insured. Unlike many current homeowner insurance contracts, Betty's policies did not contain a specific exclusion for claims arising from sexual molestation. Hence, nothing we hold in this case concerns how an exclusion framed in those terms should be construed. By the same token, the policy interpretation advanced by Safeco—i.e., that David's intentional acts of molestation bar coverage for *all other* insureds' liability arising from these acts—would apply not only to cases of sexual misconduct, but to all claims against one insured on grounds that his or her mere negligence permitted another insured to

commit an intentional tort. As we have indicated, in light of the severability clause in Betty's policies, we cannot accept Safeco's view of the scope of its exclusion.

Our close review of relevant decisional law, both in California and elsewhere, does not alter our conclusion. At the outset, we note that two Court of Appeal decisions have touched upon the interplay between an exclusionary clause and a severability clause. Neither case is directly on point, and neither persuades us to depart from our reasoning in the matter before us.

In *California Casualty Ins. Co.*, *supra*, 48 Cal.App.4th 1682, one Yessian, while riding a jet ski, was injured in a collision with a "Waverunner" watercraft owned by a married couple, the Harmers. At the time of the accident, Mr. Harmer was operating the Waverunner, and Mrs. Harmer was a passenger. The Waverunner was powered by an internal jet pump. One of the Harmers' liability policies expressly excluded coverage for liability for injury " 'arising out of . . . the ownership, maintenance, use, loading or unloading of a watercraft . . . with inboard . . . motor power owned by any insured.' " (*Id.* at p. 1690.) The policy also contained a clause providing that it (i.e., the policy) applied " 'separately to each insured.' " (*Id.* at p. 1696.)

In a coverage action, Yessian, as assignee of the Harmers' liability coverage claims, asserted, among other things, that even if the policy excluded coverage for both Harmers based on ownership and operation of the Waverunner, the severability clause provided "separate" protection for Mrs. Harmer against a theory, not based on ownership or use of the Waverunner, that she was derivatively liable for her husband's tort under the community property laws—i.e., that a tort judgment against Mr. Harmer could be enforced against her community interest in the marital estate. The Court of Appeal, like the trial court, rejected this argument.

The Court of Appeal noted the California rules that the exclusion of a particular event from liability coverage also excludes coverage for derivative or vicarious liability arising from the same event (citing *Hartford Fire Ins. Co. v. Superior Court* (1983) 142 Cal.App.3d 406, 416 [191 Cal.Rptr. 37] [aircraft exclusion barred air crash coverage for derivative liability of pilot's spouse under community property laws]) and that if a policy excludes coverage for the particular act of "an" or "any" insured, commission of an excluded act by one insured bars coverage for all other insureds arising from this act, even if claims against the other insureds are not based on their personal commission of the act. In the Court of Appeal's view, the fact that the policy before it had a severability clause did not alter these principles. (*California Casualty Ins. Co.*, *supra*, 48 Cal.App.4th 1682, 1695–1698.)

For guidance, the Court of Appeal referred to the split in authority in other jurisdictions concerning how a severability clause affects a policy exclusion (see discussion, *ante* and *post*). The court found that, "at least in the context of this case, in which coverage is urged on the basis of the community property laws," the decisions holding that a severability clause cannot prevail over a plainly worded exclusion were more persuasive. (*California Casualty Ins. Co.*, *supra*, 48 Cal.App.4th 1682, 1697.) As the court explained, a contrary conclusion, under the circumstances there presented, would effectively nullify a policy exclusion in the case of married coinsureds, since one coinsured spouse could always demand coverage for the excluded tortious act of the other on the mere basis of derivative community property liability. (*Id.* at pp. 1697–1698.)

Here, as we have seen, we do not confront such a case, or such a consequence. Betty seeks protection for her *separate* assets against a claim of liability based on her own conduct *independent* of David's excluded acts. Application of the severability clause to conclude that Betty is covered so long as *she personally* did not commit conduct within the intentional act exclusion does not inherently negate the operation of the exclusion against David himself. Thus, we are satisfied that *California Casualty Ins. Co.* is not dispositive or persuasive authority on the issue before us.[4]

---

[4] Safeco urges that allowing coverage under the circumstances presented here encourages artful pleading of sham tort claims of "negligent supervision" by injured persons, as well as collusion among all the parties to the underlying tort action to shift payment responsibility to a liability insurer. Safeco hints that such collusion occurred here, in that, after Safeco denied Betty's demand for a defense and indemnity in Scott's tort action, she allowed Scott to take a hefty default judgment against her, then assigned her coverage claim to Scott in return for a covenant not to execute on this judgment.

As Safeco suggests, we must be wary of policy interpretations that encourage artful and sham tort pleading, especially where a sexually molested plaintiff may thereby seek some "threadbare" means of tapping into the judgment-proof molester's liability insurance, contrary to the public policy against coverage for intentional acts of sexual abuse. (See Ins. Code, § 533; *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1019 [278 Cal.Rptr. 64, 804 P.2d 689]; *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1089 [17 Cal.Rptr.2d 210, 846 P.2d 792] (conc. opn. of Baxter, J.).) But the public policy against insurance for one's own intentional sexual misconduct does not bar liability coverage for others whose mere negligence contributed in some way to the acts of abuse. In such cases, at least there is no overriding policy reason why a person injured by sexual abuse should be denied compensation for the harm from insurance coverage purchased by the negligent facilitator.

Of course, Safeco specifically promised to defend Betty against claims that would be covered if true, even if they ultimately turned out to be "groundless, false, or fraudulent." On the other hand, if an insurer's investigation discloses that there is, in fact, no possibility of coverage—for example, where, in order to avoid a coverage exclusion, a third party has artfully pled as mere negligence what the insurer can prove was intentional misconduct by the insured—the insurer's duties to defend and indemnify cease from that time forward. (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655, 657 [31 Cal.Rptr.3d 147, 115 P.3d 460]; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 [65 Cal.Rptr.2d 366, 939 P.2d 766]; but see *Horace Mann Ins. Co. v. Barbara B.*, *supra*, 4 Cal.4th 1076, 1082–1083.) And "collusion"

A more recent case, *Bjork, supra*, 157 Cal.App.4th 1, addressed the application of a severability clause as against a so-called "resident relative" exclusion. Plaintiff Bjork sued her mother, Carol Fergerson, alleging that Carol negligently failed to prevent Melvin Fergerson, Carol's husband and Bjork's father, from molesting Bjork while Bjork was a minor living in the family home. Certain of Carol and Melvin's State Farm homeowners policies for the relevant period excluded liability coverage for " 'bodily injury to you or any insured.' " "Insured" was defined to include " 'you and, if residents of your household: [¶] a. your relatives; and [¶] b. any other person under the age of 21 who is in the care of a person described above.' " (*Bjork, supra*, 157 Cal.App.4th 1, 4.)

State Farm denied coverage under these policies, citing the resident relative exclusion. Thereafter, Bjork and Carol stipulated to a judgment against Carol, who then assigned her claims against State Farm to Bjork in return for a covenant not to execute on the judgment. As assignee of Carol's claims, Bjork sued State Farm, alleging an improper denial of liability coverage to Carol. State Farm moved for summary judgment, again invoking the resident relative exclusion. The trial court granted summary judgment, and the Court of Appeal affirmed.

On appeal, Bjork urged, among other things, that the policies' severability clause precluded application of the resident relative exclusion to Carol. Alluding to the concurring and dissenting opinion in *Robert S., supra*, 26 Cal.4th 758, Bjork argued that, in light of the severability provision, the policy's exclusions, including the resident relative exclusion, must apply *individually* to each insured, and solely from the perspective of the person seeking coverage. Hence, Bjork insisted, in an assessment whether Carol was entitled to liability protection against a tort claim advanced by Bjork, the fact that Bjork met the resident relative definition of an additional insured, whose injuries were thus excluded from the policies' liability coverage, should be disregarded.

In rejecting this argument, the *Bjork* Court of Appeal pointed out the distinction between the facts of *Robert S.* and those of the case before it. As the *Bjork* court explained: In *Robert S.*, the policy excluded liability coverage for claims arising from any " ' "illegal act" ' " committed by " ' "an insured," ' " but it also contained a severability clause. (*Bjork, supra*, 157 Cal.App.4th 1, 9, italics omitted, quoting *Robert S., supra*, 26 Cal.4th 758, 763.) The insured parents in *Robert S.* sought coverage for a negligent supervision claim arising from a fatal shooting in the family home by their

---

of the sort Safeco suggests here is a common result when a liability insurer's decision to opt out of the third party suit is made prematurely—i.e., before the insurer has reliably determined that there is no potential for coverage.

resident, and coinsured, son, who was convicted of manslaughter for the killing. In those circumstances, the concurring and dissenting opinion in *Robert S.* argued, the severability clause caused the illegal act exclusion to bar coverage only for the insured who had committed a criminal violation, not for other insureds whose liability was not based on their commission of such an excluded act.

Noting the split of authority on the issue, the *Bjork* court "[did] not take a position" on whether the concurring and dissenting opinion in *Robert S.* stated the correct view of a severability clause. (*Bjork, supra,* 157 Cal.App.4th 1, 11, fn. 11.) Instead, *Bjork* reasoned that even if, as that opinion suggested, such a clause requires evaluation of each insured's coverage solely from that insured's individual perspective, Carol, the sued parent in *Bjork* itself, had no claim under her State Farm policies in view of the resident relative exclusion. This, *Bjork* explained, was because the policy clearly provided, and informed each individual insured, that liability claims *between persons insured under the policy,* including relatives residing in the same household, were excluded from coverage. Acceptance of Bjork's argument that Carol was covered despite the resident relative exclusion would remove all meaning and purpose from the exclusion for liability disputes between coinsured persons.

We do not face that situation here. As in *Robert S.,* the exclusion at issue is for particular *acts* by *an insured,* but a severability clause promised "separate" application of the policies' provisions to each insured. Under these circumstances, as in *Robert S.,* the severability clause in the policies may reasonably and logically be read to provide that the exclusion applies only to a particular insured who personally engaged in the excluded conduct. Nothing in *Bjork* is inconsistent with such a construction.[5]

---

[5] We stress that our reasoning and conclusion under the specific circumstances of this case, which involves the interplay between a severability clause and an exclusion for the *intentional acts* of "an" insured, does not mean a severability clause necessarily affects *all* exclusions framed in terms of "an" or "any" insured. Thus, the concern of both Safeco and its amici curiae that we must consider how such a ruling would affect each of the numerous uses of the phrase "an insured" throughout Safeco's policies is not well founded. In some cases, the collective application of an exclusion that refers to "an" or "any" insured may be so clear in context that the presence of a severability clause could neither create, nor resolve, an ambiguity. In such cases, even the broadest interpretation of the severability clause could not affect the obvious meaning of the exclusion except, impermissibly, to negate it completely. Possible examples include common exclusions of liability coverage for *entire categories of risk* (such as liability arising from "an" or "any" insured's ownership or operation of an airplane, car, or boat), or for claims by one insured against another person insured under the same policy.

A number of decisions from other jurisdictions holding that a severability clause could not alter a plainly worded exclusion applicable to "an" or "any" insured have involved just such types of exclusions. (See, e.g., *United Fire and Cas. Co. v. Reeder* (5th Cir. 1993) 9 F.3d 15 [applying La. law; liability exclusion for injury to "an insured"]; *Michael Carbone, Inc., supra,*

As indicated above, decisions in other jurisdictions have disagreed about the effect of a severability clause, in a liability policy covering multiple insureds, on an exclusion for the intentional, criminal, or fraudulent acts of "an" or "any" insured. Some have concluded that, when one of these indefinite articles is used in the exclusion, the presence of a severability clause renders the scope of the exclusion ambiguous. Invoking the rule of construction in favor of the insured, these decisions have held that the exclusion is thus several, not collective, such that the noncovered act of one insured does not preclude coverage for other insureds who did not themselves act intentionally, criminally, or fraudulently. (E.g., *Shapiro v. American Home Assur. Co.* (D.Mass. 1984) 616 F.Supp. 900, 904 ["any" is ambiguous; thus, severability clause makes exclusion in Securities Act of 1933 (15 U.S.C. § 77a et seq.) liability policy for fraudulent act of "any" insured several rather than collective]; *Premier Ins. Co. v. Adams* (Fla.Dist.Ct.App. 1994) 632 So.2d 1054, 1055 [severability clause limited exclusion for intentional act of "any insured" to particular insured who intentionally caused injury (italics omitted)]; *Catholic Diocese of Dodge City v. Raymer* (1992) 251 Kan. 689 [840 P.2d 456, 459–462] ["an" is ambiguous; thus, severability clause makes exclusion for intentional act of "an" insured several rather than collective]; *Northwestern Nat. Ins. Co. v. Nemetz* (1986) 135 Wis.2d 245 [400 N.W.2d 33, 38] [same].)[6]

937 F.Supp. 413 [applying N.J. law; exclusion for liability arising from ownership or operation of motor vehicle by "any insured"]; *BP America v. State Auto Property & Cas. Ins. Co.* (2005) 2005 OK 65 [148 P.3d 832] [same under Okla. law]; *Government Employees Ins. Co. v. Moore* (2003) 266 Va. 155 [580 S.E.2d 823, 825] [exclusion for liability for "[p]ersonal injury to any insured"]; *American Motorists Ins. Co. v. Moore* (Mo.Ct.App. 1998) 970 S.W.2d 876 [liability exclusion for injury to "an" insured; "insured" included relative residing in named insured's household]; *Oaks v. Dupuy* (La.Ct.App. 1995) 653 So.2d 165 [liability exclusion for motor vehicle ownership or operation by "any insured"]; *Gorzen v. Westfield Ins. Co.* (1994) 207 Mich.App. 575 [526 N.W.2d 43] [liability exclusion for motor vehicle ownership or operation by "an" insured; court noted that exclusion from policy of entire *category of events* was clear]; *National Ins., etc. v. Lexington Flying Club* (Ky.Ct.App. 1979) 603 S.W.2d 490 [liability exclusion for bodily injury to "a named insured" and residents of " 'named insured's' " household].)

Application of a severability clause can never result in a finding of coverage the insured had no objective reason to expect. Thus, each exclusion applicable to "an" or "any" insured must be examined individually, and in context, to determine the effect a severability clause like the one at issue here might have on its operation.

[6] A number of additional decisions have concluded that a severability clause may negate the collective effect of even such "categorical risk" exclusions as those for injuries arising from vehicle ownership or use, or business pursuits, by "an" or "any" insured, as well as the common homeowners policy exclusion for injuries to "an" or "any" household member who is insured under the same policy. (See, e.g., *State Farm Fire & Cas. Ins. Co. v. Keegan* (5th Cir. 2000) 209 F.3d 767, 770–771 [applying Tex. law; by virtue of severability clause, exclusion for injury to "an" insured, defined to include resident of named insured's household, did not bar coverage of one named insured against claims of injury to resident of another named insured's household]; *West American Ins. Co. v. AV&S* (10th Cir. 1998) 145 F.3d 1224, 1226 [applying Utah law; by virtue of severability clause, business liability policy's exclusion for injury

A greater number of cases, we recognize, have taken the opposite view, concluding that a severability clause does not alter the collective application of an exclusion for intentional, criminal, or fraudulent acts by "an" or "any" insured. These decisions have variously reasoned that a severability clause is intended only to extend *policy limits* separately to each insured and, in any event, cannot prevail over a clear expression that coverage for all insureds is barred in a case where "an" or "any" insured has committed an excluded act. (E.g., *EMCASCO Ins. Co. v. Diedrich* (8th Cir. 2005) 394 F.3d 1091, 1094, 1098 [applying S.D. law; exclusion for intentional acts by "one or more insureds" is clearly collective and cannot be affected by severability clause]; *Standard Fire Ins. Co. v. Proctor* (S.D.Md. 2003) 286 F.Supp.2d 567, 574 [applying Md. law; "any," unlike "an," is not ambiguous; thus, regardless of severability clause, exclusion for intentional act of "any" insured is collective rather than several]; *Allstate Ins. Co. v. Kim* (D. Hawaii 2000) 121 F.Supp.2d 1301, 1308 [applying Hawaii law; exclusion for intentional act by "an insured" unambiguously applies to "innocent" coinsureds, regardless of severability clause]; *Safeco Ins. Co. v. White* (2009) 122 Ohio St.3d 562 [2009 Ohio 3718, 913 N.E.2d 426, 441–442] [severability clause does not suggest that "an insured" or "any insured" means "the insured," or that exclusions would not apply to innocent coinsureds]; *SECURA Supreme Ins. Co. v. M.S.M.* (Minn.Ct.App. 2008) 755 N.W.2d 320, 328–329 [severability clause did not render ambiguous, or otherwise affect, clearly collective bar of coverage for injury arising from criminal act of "any" insured]; *Villa v. Short* (2008) 195 N.J. 15 [947 A.2d 1217, 1225] ["an insured," as used in intentional act exclusion, has the same collective meaning as "any insured," and is thus not made ambiguous by severability clause]; *J.G. v. Wangard* (2008) 2008 WI 99 [313 Wis.2d 329, 753 N.W.2d 475, 486] [exclusion for damage caused by

---

arising from use of motor vehicle owned or operated by "any" insured did not apply to those insureds who did not own or operate the accident vehicle]; *State Farm Fire and Cas. Co. v. Hooks* (2006) 366 Ill.App.3d 819 [304 Ill.Dec. 469, 853 N.E.2d 1, 9] [in light of severability clause, exclusion for injury to "any" insured, defined to include resident of named insured's household, did not bar coverage for one named insured against claims of injury to person living in another named insured's household]; *United Servs. Auto. v. DeValencia* (1997) 190 Ariz. 436 [949 P.2d 525, 527] [by virtue of severability clause, exclusion in parents' homeowners policy for injury arising from business engaged in by "an" insured did not bar coverage of molestation claims against 14-year-old son, who was additional insured, absent evidence he was personally engaged in parents' daycare business]; *American Nat. Fire Ins. v. Fournelle Est.* (Minn. 1991) 472 N.W.2d 292, 295 [in light of severability clause, exclusion for injury to "any" insured, defined to include resident of named insured's household, should be narrowly construed to allow coverage for claims against one named insured for injury to persons who were residents of the other named insured's household]; *Worcester Mut. Ins. Co. v. Marnell* (1986) 398 Mass. 240 [496 N.E.2d 158, 161] [by virtue of severability clause, exclusion in parents' homeowners policy for injury arising from use of motor vehicle owned or operated by "any" insured did not bar coverage of parents for claims of negligent supervision of son's party, leading to drunken, injury-causing accident by son, an additional insured, in his own car].)

intentional act of "any," as opposed to "an," insured is collective to all coinsureds, regardless of severability clause]; *Mutual of Enumclaw Ins. Co. v. Cross* (2000) 103 Wn.App. 52 [10 P.3d 440, 445] [severability clause does not render ambiguous either "an insured" or "any insured" as used in intentional act exclusion]; *Johnson v. Allstate Ins. Co.* (1997) 1997 ME 3 [687 A.2d 642, 645] [severability clause cannot alter clearly collective effect of exclusion for intentional act of "an insured"]; *American Family v. Copeland-Williams* (Mo.Ct.App. 1997) 941 S.W.2d 625, 627–629 [exclusion for damages from intentional act by "any insured" is unambiguously collective rather than several, despite severability clause]; *Chacon v. American Family Mut. Ins. Co.* (Colo. 1990) 788 P.2d 748, 752 [exclusion for intentional act by "any insured" is collective despite severability clause]; *Great Central Ins. Co. v. Roemmich* (S.D. 1980) 291 N.W.2d 772, 774–775 [exclusion for intentional act of "any insured" is unambiguous and cannot be affected by severability clause].)[7]

■ For the reasons we have detailed above, we agree with those cases giving effect to a severability or "separate insurance" clause as against an exclusion of coverage for the intentional acts of "an" insured. As we have explained, even if a provision excluding coverage for injury arising from the specified acts of "an" insured would normally mean that the excludable conduct of one insured bars coverage for all, a policy provision stating that "[t]*his insurance* applies *separately* to *each* insured" (italics added) reasonably implies a contrary result, at least in certain circumstances. Such a severability or "separate insurance" clause may reasonably be read as applying both the policy's coverage *and its exclusions* individually to each person protected by the policy, with the result, in a case like this one, that an exclusion of coverage for a specified kind of culpable conduct applies only to the individual insured or insureds who committed it.

The ambiguity thus created must be resolved, if possible, in a way that preserves the objectively reasonable coverage expectations of the insured seeking coverage. Here, even if Betty's homeowners policies excluded liability coverage for injuries intentionally caused by "an" insured, she had, in light of the policies' severability clause, an objectively reasonable expectation that the policies would cover her so long as her own conduct did not fall within the intentional acts exclusion. She had no reason to expect that David's residence in her home, and his consequent status as an additional

---

[7] As indicated above, several out-of-state decisions have expressly distinguished between exclusionary clauses that apply to the specified activities of "an" insured and those that frame the exclusion in terms of a particular activity by "any" insured. These cases suggest that, while "an" could mean either "the" or "any," and is thus ambiguous in light of a severability clause, the use of "any" clearly conveys that the excluded activity of one insured will bar coverage for all others, regardless of a severability clause. Here, we confront a policy that excluded coverage for injuries caused by "an" insured's intentional acts.

insured on her homeowners policies, would *narrow* her own coverage, and the protection of her separate assets, against claims arising from *his* intentional acts.[8]

■ We therefore hold that, in light of the severability clause in Betty's policies, the exclusion of coverage for injuries arising from "an" insured's intentional acts did not preclude coverage for Betty's liability, if any, arising from the molestations for the sole reason that *David*, another insured under the policies, had committed intentional, and thus excludable, acts. Instead, Betty's coverage must be analyzed on the basis of whether *she herself* committed an act or acts that fell within the intentional act exclusion. Accordingly, we answer the question presented by the United States Court of Appeals for the Ninth Circuit "no."

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

[8] As noted above, the policy exclusion at issue applied to injury or damage "which is *expected or intended by an insured* or which is the *foreseeable result of an act or omission intended by an insured . . . .*" (Italics added.) Citing this language, Safeco argued in its brief on the merits, and stressed at oral argument, that *even if* the severability clause requires separate analysis of Betty's coverage, regardless of whether *David's* acts fell within the exclusionary clause, the exclusion nonetheless applied *directly* to Betty in light of allegations in Scott's tort complaint that Betty actually saw David molesting Scott, and thus must herself at least have "expected" the inherent injury arising from the molestations. Safeco has also asserted, for similar reasons, that coverage for Betty is directly barred because injury to Scott, as the result of David's intentional molestations, was "foreseeable" to Betty. But these issues are outside the scope of the question presented to us by the Ninth Circuit Court of Appeals, and we therefore do not address them.