**NOT FOR PUBLICATION**

**FILED**

DEC 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| J & J REALTY HOLDINGS, | No. 19-56172 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-02487-DGM-E |
| v. | |
| GREAT AMERICAN E & S INSURANCE COMPANY, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Dolly Gee, District Judge, Presiding

Submitted December 9, 2020**
Pasadena, California

Before: OWENS and LEE, Circuit Judges, and COGAN,*** District Judge.

J & J Realty Holdings appeals from the district court's grant of summary

judgment in favor of Great American E & S Insurance Company. The district court

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Brian M. Cogan, United States District Judge for the Eastern District of New York, sitting by designation.

resolved this insurance coverage dispute in favor of Great American and held that an employer's liability exclusion applied. We have jurisdiction under 28 U.S.C. § 1291, and we review de novo a district court's grant of summary judgment. *Baker v. Liberty Mut. Ins. Co.*, 143 F.3d 1260, 1263 (9th Cir. 1998). We affirm.

1.      Great American issued a joint insurance policy ("Policy") to Lance Campers Manufacturing Company and J & J, which leased its parking lot to Lance. The Policy contains an Employer's Liability Exclusion, which bars coverage for personal injury suits brought by an "employee of any insured." When an employee of Lance suffered an injury in the parking lot and sued both J & J and Lance, Great American denied coverage to both insureds on the basis that the employee was an employee of "any insured." J & J, however, argued that "any insured" was ambiguous in light of the Policy's Separation of Insureds Clause, which directs "this insurance" to apply "as if each named insured were the only named insured" and "separately to each insured against whom claim is made or suit is brought."

2.      The district court properly held that the Employer's Liability Exclusion bars coverage in the underlying personal injury action, notwithstanding the existence of the Separation of Insureds Clause. As a threshold matter, the Employer's Liability Exclusion originally barred coverage for personal injury suits brought by an employee of "the insured." This language was modified via an endorsement that replaced "the insured" with "any insured." J & J challenges the enforceability of

2

this endorsement for the first time on appeal, but we conclude that the endorsement was sufficiently clear and conspicuous to be valid.

Turning to the "any insured" language itself, the phrase "an employee of any insured" unambiguously refers to an employee of *either* J & J *or* Lance. Because the underlying action in this case was brought by an employee of Lance, the plain language of the Employer's Liability Exclusion thus bars coverage for J & J in the underlying action. J & J maintains, however, that the phrase "any insured" is rendered ambiguous by the Policy's Separation of Insureds Clause. The problem with J & J's interpretation is that applying the Separation of Insureds Clause to limit the universe of "any insured" to only the party seeking coverage (in this case, J & J) would require us to read the phrase "any insured" as if it said "the insured." Those words are meaningfully different. Such a reading would thus nullify the "any insured" endorsement. And under California law, we "must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998).

Not only that, but J & J's preferred reading would render meaningless other parts of the Employer's Liability Exclusion as well. For example, that provision also contains language stating that the exclusion should apply "whether the insured may

3

be liable as an employer *or in any other capacity*." As the district court explained, reading the exclusion to apply only to the employer of employees that sustain injuries during the course of employment would mean that the employer's liability would always be in its capacity as an employer and never in "any other capacity," thus rendering the "in any other capacity" language meaningless. The fact that the text of the provision specifically contemplates the exclusion applying to both employers and non-employers further supports applying the plain language of the Employer's Liability Exclusion to exclude coverage for the underlying action.

The California Supreme Court's decision in *Minkler v. Safeco Ins. Co. of America*, 49 Cal. 4th 315 (2010) does not change this outcome. Although *Minkler* does contain an ostensibly broad direction to treat each insured as if they were the "*sole* person covered" for all policy purposes, *Minkler*, 49 Cal. 4th at 323, the California Supreme Court was also careful to limit *Minkler*'s holding to its facts. Specifically, the court made clear that the "reasoning and conclusion" in *Minkler* were only meant to apply to "the specific circumstances of this case, which involves the interplay between a severability clause and an exclusion for the *intentional acts* of 'an' insured," and that *Minkler* should not be read to "mean a severability clause necessarily affects *all* exclusions framed in terms of 'an' or 'any' insured." *Id*. at 329 n.5. What is more, *Minkler* explicitly acknowledged that there could be "some cases" where "the collective application of an exclusion that refers to 'an' or 'any'

4

insured may be so clear in context that the presence of a severability clause could neither create, nor resolve, an ambiguity." *Id.*

This is one of those clear cases, and *Minkler* is readily distinguishable. For one, *Minkler*'s primary concern about thwarting the reasonable expectations of an innocent insured is much less persuasive here. That case involved a highly unique situation in in which a homeowner lost liability coverage due to an intentional-acts exclusion because her adult son, the tortfeasor, was deemed to be an additional insured solely by virtue of living in her house temporarily. *Minkler*, 49 Cal. 4th at 332-33. J & J, on the other hand, is a sophisticated business entity that voluntarily entered into a lessor-lessee relationship with Lance and was explicitly listed as an additional named insured under Lance's insurance policy. In this case, it is much more of a stretch to say that J & J had no reason to expect that the Employer's Liability Exclusion would be triggered by its co-insured's circumstances, especially considering the fact that, as discussed above, the scope of the exclusion was explicitly broadened via an endorsement.

3.      Next, the district court also properly held that J & J's claim for breach of the implied covenant of good faith and fair dealing could not survive in the absence of any potential for coverage. Under California law, "if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because

5

the covenant is based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).

4. Finally, the district court did not abuse its discretion in overruling J & J's objections to certain pieces of evidence on summary judgment. The district court correctly explained that even though some pieces of evidence were not necessarily admissible in their submitted form, the underlying evidence could still be considered as long as it could later be provided in an admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). And the district court did not abuse its discretion in determining that the objected-to evidence could likely be presented in an admissible form at trial.

**AFFIRMED.**