Filed 7/5/23  Spaghettini v. Fireman's Fund Ins. Co. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| SPAGHETTINI, LP,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>    Defendant and Respondent. | A163858<br><br><br>(Sonoma County<br>Super. Ct. No. SCV-266378) |

Spaghettini, LP sued its insurer, Fireman's Fund Insurance Company, for breach of contract, among other causes of action, after Fireman's denied Spaghettini's claim for losses it sustained because of the COVID-19 pandemic.  The trial court sustained Fireman's demurrer without leave to amend. Spaghettini appeals from the judgment entered in Fireman's favor.  Spaghettini argues that the trial court erred by concluding Spaghettini's COVID-19 pandemic losses were not covered under its commercial property insurance policy.  Finding no error, we affirm.

### BACKGROUND

#### A.

Spaghettini owns and operates a restaurant in Orange County.  It purchased a commercial property insurance policy

1

from Fireman's, which was effective between February 2, 2020 and February 2, 2021.

In the policy's provision for business income and extra expense coverage, Fireman's promised to pay for "the actual loss of business income and necessary extra expense you sustain *due to the necessary suspension of your operations* during the period of restoration *arising from direct physical loss or damage to property* at a location, or within 1,000 feet of such location, caused by or resulting from a covered cause of loss." (Italics added and bold omitted.) A "slowdown or cessation of [business] operations" at the insured property is a "[s]uspension" under the policy. (Bold omitted.) Coverage under this provision is limited to the "[p]eriod of restoration," during which property is "repaired, rebuilt, or replaced." (Bold omitted.)

The policy also contains an extension of coverage for communicable disease, which provides: "We will pay for *direct physical loss or damage* to Property Insured caused by or resulting from a *covered communicable disease event* at a location including the following necessary costs incurred to: [¶] (a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease; [¶] (b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and [¶] (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease." (Italics added and bold omitted.)

**B.**

In March 2020, in response to the COVID-19 pandemic, the Governor of California and Orange County issued shelter-in-place orders mandating all restaurants suspend in-person dining. The orders allowed restaurants to operate only for take-out, drive-through, or food delivery. Because of these and later orders (of which the trial court took judicial notice), Spaghettini was forced

to shut down its indoor dining, which significantly reduced its business.

That same month, Spaghettini submitted notice to Fireman's of its "property and business-interruption loss" and the presence of infected persons on or near its property. Fireman's rejected Spaghettini's claim, explaining that there was no coverage because it suffered no physical loss or damage to property.

Spaghettini sued Fireman's for breach of contract, breach of the implied covenant of good faith and fair dealing, false promise, and negligent misrepresentation. In its operative complaint, Spaghettini alleges that, in March 2020, state and local governments issued business closure and stay-at-home orders to control the spread of COVID-19 within the community. Later, government orders imposed strict capacity limits and distancing requirements. Spaghettini also alleges that the virus was present at its restaurant, as evidenced by the fact that individuals who tested positive for the coronavirus were present at the covered property in 2020 and 2021.

Spaghettini asserts it was "forced to suspend and reduce its business" both by the government orders that compelled a shutdown of business operations and by physical damage or loss caused by "physical droplets" containing COVID-19 landing on surfaces and then "attach[ing] to and adher[ing] on surfaces and materials, . . . becom[ing] a part of those surfaces and materials [and] converting the surfaces and materials to fomites." Spaghettini further alleges that this "represents a physical change in the affected surface or material"—changing them from safe to dangerous—"which constitutes physical loss and damage." The complaint also includes allegations that COVID-19 "caused such physical loss and damage to [Spaghettini's] property."

In addition to lost business revenue due to the suspension of operations, Spaghettini alleges that, by physically altering,

"infest[ing]," and rendering its property unusable, COVID-19 necessitated it incur additional expenses to clean, sanitize, repair, alter, modify, or otherwise make its restaurant safe.

## C.

Fireman's filed a demurrer, asserting that, as a matter of law, there was no coverage because Spaghettini had not adequately alleged direct physical loss or damage to the property and, in the alternative, it had not alleged facts showing that its COVID-19 losses were caused by direct physical loss or damage. In addition, Fireman's argued that Spaghettini could not establish the prerequisites necessary for communicable disease coverage.

The trial court sustained Fireman's demurrer without leave to amend. The court noted that "the presence of Covid-19 particles does not amount to 'distinct, demonstrable, physical alteration of the property,'" and that, accordingly, Spaghettini failed to allege direct physical loss or damage to its property. The trial court also observed that Spaghettini failed to allege the occurrence of a "communicable disease event" because it did not allege that a public health authority ordered that Spaghettini's premises in particular must be evacuated, decontaminated, or disinfected due to an outbreak there. The court entered judgment in Fireman's favor.

## DISCUSSION

## A.

Spaghettini argues that the trial court erred by sustaining Fireman's demurrer because Spaghettini adequately alleged the " 'direct physical loss or damage' " required for coverage under the policy's business income and extra expense provision. We have independently reviewed Spaghettini's operative complaint to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*Mathews v. Becerra* (2019) 8

4

Cal.5th 756, 768 (*Mathews*).)  Although our opinion is based on different reasoning, we conclude the trial court did not err by sustaining Fireman's demurrer without leave to amend.

## 1.

In reviewing the sufficiency of a complaint, we treat the demurrer as admitting all properly pleaded facts.  But we do not accept the truth of factual or legal conclusions.  (*Mathews, supra*, 8 Cal.5th at p. 768.)  We also consider the complaint's exhibits and matters that may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*).)  We affirm a judgment of dismissal if it is proper on any grounds stated in the demurrer, regardless of whether the court stated that ground as its rationale.  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

Interpretation of an insurance policy is a question of law. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.) We aim to give effect to the parties' mutual intentions.  (*Ibid*.; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; see Civ. Code, § 1636.)  An insurance policy "must be examined as a whole, and in context, to determine whether an ambiguity exists." (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 322 (*Minkler*).)  "If contractual language is clear and explicit, it governs." (*Bank of the West*, at p. 1264; see Civ. Code, § 1638.) Terms are to be interpreted in their lay or ordinary sense. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 471; see Civ. Code, § 1644.)

If the terms are ambiguous—that is susceptible of more than one reasonable interpretation—we interpret them to protect the insured's objectively reasonable expectations.  (*Bank of the West v. Superior Court, supra*, 2 Cal.4th at pp. 1264-1265.)  "Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer." (*Minkler, supra,* 49 Cal.4th at p. 321.)

The insured bears the burden of establishing that its claim falls within a policy's coverage. (*Minkler, supra,* 49 Cal.4th at p. 322.)

**2.**

Spaghettini's argument on appeal is two-pronged. First, it contends that the trial court misinterpreted the policy because "direct physical loss or damage" does not require a "distinct, demonstrable, physical alteration" of the property and that allegations of loss of use suffice. In the alternative, if physical tangible alteration is required, Spaghettini insists that it has satisfied this requirement by alleging both the presence of COVID-19 at its property and that COVID-19 particles transform once safe surfaces into property that is potentially dangerous.

The meaning of "direct physical loss or damage" is well established under California law. To satisfy the policy terms, property must undergo a " 'distinct, demonstrable, physical alteration.' " (*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 779 (*MRI Healthcare*); *Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co.* (2023) 91 Cal.App.5th 24, 38.) " '[D]etrimental economic impact' " does not suffice on its own. (*MRI, supra,* at p. 779; accord, *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.* (2022) 77 Cal.App.5th 753, 759-760 (*Musso & Frank*).)

Spaghettini maintains that, in requiring physical alteration, *MRI Healthcare* misstated California law. Specifically, it insists that the treatise on which *MRI Healthcare* relied for this proposition—10A Couch on Insurance (3d ed. 2005) § 148:46—was wrong. (*MRI Healthcare, supra*, 187 Cal.App.4th at pp. 778-779.)

This may have been a stronger line of attack when Spaghettini opposed Fireman's demurrer in the trial court. Since then, however, numerous California courts of appeal have

6

considered the same argument.[1] And all but one of those courts have held (or assumed) that "direct physical loss or damage," as used in a business interruption policy, requires a physical alteration of the covered property. (See *Apple Annie, LLC v. Oregon Mutual Ins. Co.* (2022) 82 Cal.App.5th 919, 935; *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 107-108 (*Marina Pacific*); *United Talent Agency v. Vigilant Ins. Company* (2022) 77 Cal.App.5th 821, 830-833 (*United Talent*); *Musso & Frank, supra,* 77 Cal.App.5th at pp. 758-760; *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 705-708 (*Inns*).)[2] Accordingly, Spaghettini now faces a solid "wall of precedent" that holds that direct physical loss or damage requires physical alteration of the covered property. (*Apple Annie, supra,* at p. 935 ["[w]hen originally published, the Couch formulation may not have reflected widespread acceptance by the courts, but such acceptance has now been achieved"].) We agree with this conclusion and see no need to repeat the analysis.

*Coast Restaurant Group, Inc. v. Amguard Ins. Co.* (2023) 90 Cal.App.5th 332 is the sole outlier. In *Coast Restaurant*, Division Three of the Fourth District recently held that a restaurant's losses (caused by COVID-19 closure orders) were potentially covered even without physical damage or alteration. (*Id.* at pp. 339-340.) The court concluded that deprivation of important

---

[1] We received supplemental briefing from the parties addressing the opinions decided after their initial briefing.

[2] Applying California law, the Ninth Circuit Court of Appeals has also reached the same conclusion. (See *Mudpie, Inc. v. Travelers Casualty Insurance Co. of America* (9th Cir. 2021) 15 F.4th 885, 892 [concluding business interruption policy providing coverage for "physical loss and damage" requires some form of demonstrable, physical alteration of property and that mere loss of use due to COVID-19 closure orders is insufficient to trigger coverage].)

property rights was sufficient standing alone to constitute direct physical loss because the government orders "[directly] affected how the physical space of the property and the physical objects (chairs, tables, etc.) in that space could or could not be used." (*Id.* at p. 340.) We do not consider *Coast Restaurant*'s reasoning persuasive. In any event, in its supplemental briefing, Spaghettini does not suggest we follow it.

Spaghettini has not demonstrated any error in the trial court's interpretation of the policy terms.

**3.**

Alternatively, Spaghettini argues that it adequately alleged "direct physical loss or damage" under the *MRI Healthcare* formulation because the presence of the virus physically altered property at the restaurant. There is a split of authority on this question. (Compare *United Talent, supra*, 77 Cal.App.5th at pp. 826, 834-835, 838 [allegations that virus altered property by adhering to its surface are insufficient] with *Marina Pacific, supra*, 81 Cal.App.5th at pp. 108-109 [court must accept allegations that virus altered property, however improbable].) In *Another Planet Entertainment, LLC v. Vigilant Insurance Co.* (9th Cir. 2022) 56 F.4th 730, 731, 733-734, the United States Court of Appeals for the Ninth Circuit certified that question to the California Supreme Court. (*Another Planet Entertainment, LLC v. Vigilant Insurance Co.*, S277893, Supreme Ct. Mins., Mar. 1, 2023.)

We are inclined to disagree with Fireman's argument (with which the trial court agreed) that the COVID-19 virus categorically cannot cause direct physical loss or damage to property. Spaghettini points out that this position appears inconsistent with the policy's communicable disease coverage. (*Marina Pacific, supra*, 81 Cal.App.5th at p. 112 [observing that communicable disease coverage (identical to that contained in the policy before us) "explicitly contemplates that a communicable

8

disease, such as a virus, can cause damage or destruction to property and that such damage constitutes direct physical loss or damage as defined in the policy"].)  However, we need not decide the issue here because, even if we assume Spaghettini is correct and that it adequately alleges physical alteration of its property, there is still no coverage under the facts it pleads.

The problem is causation—specifically, whether the physical presence of the virus at the restaurant *caused* Spaghettini to suspend its operations and thus incur the lost income and expenses.  (See *Inns, supra*, 71 Cal.App.5th at pp. 703-705; cf. *Best Rest Motel, Inc. v. Sequoia Ins. Co.* (2023) 88 Cal.App.5th 696, 706.)  Remember that the policy only provides coverage for loss of business income and necessary extra expense sustained "*due to the necessary suspension of your operations during the period of restoration arising from direct* physical loss of or damage to property at a location."  (Italics added.)  The question thus becomes: What caused Spaghettini to suspend its operations?

Spaghettini's complaint has two alternative causation theories.  First, Spaghettini alleges that the Governor's and Orange County's closure orders caused Spaghettini's reduction in operations, loss of income, and extra expenses.  Specifically, Spaghettini alleges that "[s]eparately, and independently, [it] *closed due to the California statewide and local Orange County related Closure and Shelter Orders* which prevented and precluded public access to the restaurant for the foreseeable future."  (Italics added.)

This causation theory is well supported with factual allegations but does not meet the terms of the policy.  The complaint extensively discusses the March 2020 county and state orders and quotes their mandates—prohibiting public and private gatherings and allowing restaurants across the entirety of each respective jurisdiction to remain open only for takeout

9

and delivery. It also alleges that it was not until several months later that the state and county permitted it to reopen "with strict reduced capacity and distancing guidelines in place." However, under the terms of the policy, Spaghettini cannot recover its losses attributable to the government's closure orders, which were issued to lessen the virus's circulation throughout society generally, not Spaghettini's restaurant specifically. (See, e.g., *Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co., supra*, 91 Cal.App.5th at p. 38; but see *Coast Restaurant Group, Inc. v. Amguard Ins. Co., supra*, 90 Cal.App.5th at pp. 339-340.)

Second, Spaghettini alleges generally that COVID-19's presence on the property caused the losses. But it does not adequately plead *facts* that support this theory. Nowhere does the complaint allege, for example, that Spaghettini suspended take-out service for a month because the virus was present in its kitchen and had caused several cooks to become ill. (See, e.g., *Marina Pacific, supra,* 81 Cal.App.5th at pp. 101-102, 108-109 [complaint adequately alleged causal link between business slowdown and COVID-19's physical presence in hotel when positive tests of multiple employees prompted health authorities to order hotel to evacuate and decontaminate]; *Shusha, Inc. v. Century-National Ins. Co.* (2022) 87 Cal.App.5th 250, 266 [complaint adequately alleged causal link when restaurant voluntarily shut down completely (including takeout and delivery business), on realizing presence of virus created dangerous condition], review granted, Apr. 19, 2023, S278614.) We cannot assume the truth of the complaint's unsupported conclusions. (See *Mathews, supra*, 8 Cal.5th at p. 768; *Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1236 ["specific allegations in a complaint control over an inconsistent general allegation"]; *Hoffman, supra,* 179 Cal.App.4th at p. 400 [courts may disregard allegations inconsistent with complaint's exhibits or contrary to judicially noticed facts].)

10

*Inns, supra*, 71 Cal.App.5th 688 involved causation allegations like Spaghettini's. The insured hotel alleged that COVID-19 was present on its premises and that its presence caused the hotel to suspend operations. (*Id.* at pp. 698-699, 703.) It also alleged "that it ceased operations 'as a direct and proximate result of the Closure Orders.' " (*Id.* at p. 703.) The *Inns* court explained that the only factually supported theory was the latter allegation and that it was fatal to the former: "[The insured hotel] cannot reasonably allege that the presence of the COVID-19 virus on its premises is what caused the premises to be uninhabitable or unsuitable for their intended purpose. . . . [A] review of the actual text of the Orders reveal that they were issued because the COVID-19 virus was present *throughout* San Mateo and Monterey Counties, not because of any particular presence of the virus on [the hotel's] premises. . . . [¶] . . . [¶] [T]he lack of causal connection between the alleged physical presence of the virus on [the insured's] premises and the suspension of [its] operations can be best understood by considering what would have taken place if [the insured] had thoroughly sterilized its premises to remove any trace of the virus after the Orders were issued. In that case, [the insured] would *still* have continued to incur a suspension of operations because the Orders would *still* have been in effect and the normal functioning of society *still* would have been curtailed." (*Id.* at p. 704.)

The same logic applies here. Spaghettini admits that it suspended or reduced its operations because the government orders forced it to. The judicially noticed orders effectively deprived the restaurant of customers by initially barring public and private gatherings and then, later, imposing strict capacity limits and distancing requirements. We must accept the truth of these allegations. (*Mathews, supra*, 8 Cal.5th at p. 768; *Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324 [allegations in a complaint are judicial admissions].) Spaghettini's specific and

11

factually supported allegations control over its inconsistent conclusory allegation—that the presence of the virus at the restaurant caused the losses. (See *Perez v. Golden Empire Transit Dist., supra,* 209 Cal.App.4th at p. 1236; *Hoffman, supra,* 179 Cal.App.4th at p. 400.)

The trial court did not err in concluding there was no business interruption coverage under the policy.

**B.**

We also reject Spaghettini's argument that it is entitled to coverage under the policy's communicable disease provision.

**1.**

The policy's communicable disease coverage states: "We will pay for *direct physical loss or damage* to Property Insured *caused by or resulting from a covered communicable disease event at a location* including the following necessary costs incurred to: [¶] (a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease; [¶] (b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and [¶] (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease." (Italics added and bold omitted.)

"Communicable disease event *means an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to* the outbreak of a communicable disease *at such location*." (Italics added and bold omitted.) "Communicable disease means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." (Bold omitted). "Location means the legal boundaries of a parcel of property at the address described in the Declarations. If the word 'location' is not shown in bold face, then such reference includes all of the following: [¶] a.

12

Location(s); and [¶] b. The legal boundaries of a parcel of property insured by Newly Acquired Location Coverage, or Unnamed Location Coverage, or both." (Bold omitted.)

**2.**

In *Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.* (2022) 83 Cal.App.5th 1062 (*Amy's Kitchen*), Division Four of this court considered a communicable disease coverage extension identical to the one before us. (*Id.* at p. 1065.) The court held that communicable disease coverage "applies only if a public health authority has ordered decontamination 'due to the outbreak of a communicable disease *at* [the insured property].' " (*Id.* at p. 1072.) Because the insured alleged only that government authorities issued orders that applied jurisdiction-wide due to general conditions in the area—and did not allege that any public health authority ordered its premises decontaminated, evacuated, or disinfected based on an outbreak at its particular premises—the court concluded that the demurrer was properly sustained because the insured failed to allege facts showing the occurrence of a "communicable disease event." (*Id.* at pp. 1067, 1069-1072.)

In other words, the policy covers a disease outbreak at the insured property itself—such as salmonella or listeria in the restaurant's kitchen—that leads to a government order requiring the restaurant to fix the problem. We cannot read the word "location" so broadly that it covers a worldwide pandemic—a disease that was literally everywhere and that led to government orders prohibiting gatherings jurisdiction-wide. (*Amy's Kitchen, supra,* 83 Cal.App.5th at pp. 1067, 1069-1072.)

Spaghettini fails to allege that any government authority ordered its premises evacuated, decontaminated, or disinfected due to an outbreak of COVID-19 *at its insured premises*. The closure orders do not fill that role. Contrary to Spaghettini's assertion in its briefs, the state and county orders were not

promulgated in response to conditions at Spaghettini's restaurant—instead, as Spaghettini's complaint accurately states, they applied to the entire state or county (respectively) and were measures taken to slow the spread of COVID-19 among the public, not at Spaghettini's premises specifically. (See *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance Co.* (7th Cir. 2022) 33 F.4th 417, 423 [" 'due to' clearly requires some degree of causation between a shutdown order and a communicable disease outbreak 'at the insured premises' "], italics omitted.)

Because Spaghettini fails to meet its burden to demonstrate coverage under either the policy's business income and extra expense provision or the communicable disease provision, we need not consider whether any policy exclusions apply.

## C.

Nor did the trial court abuse its discretion in denying leave to amend.

When a demurrer is sustained without leave to amend, we "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Spaghettini fails to identify any facts that it could allege that would demonstrate either the occurrence of a communicable disease event or that any suspension of operations was caused by physical damage or loss rather than the government orders alone. (See *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2021) 59 Cal.App.5th 965, 974 [" '[i]t is the plaintiff's burden on appeal to show in what manner it would be possible to amend a complaint to change the legal effect of the pleading' "]; *Amy's Kitchen, supra*, 83 Cal.App.5th at pp. 1072-1073 [leave to

14

amend granted because insured's counsel represented he " 'had specific calls with the county' " and that its location had been specifically directed to clean]; *Inns, supra*, 71 Cal.App.5th at pp. 704-705, 713-714.)

The trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

15

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
LANGHORNE, J.*

A163858

---

\* Judge of the Napa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.